THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, v. GEORGE DOWNS, APPELLANT.

*Manslaughter — confession thereof does not raise a presumption of murder — conviction by a jury of a less degree of a crime, because of doubt as to the commission of the higher degree.*

On the trial of a prisoner, indicted for murder and convicted of manslaughter in the first degree, it appeared that the prisoner, between eleven and twelve o'clock at night, went to the house of an acquaintance and told him that some one had been shot at his (the prisoner's) house, and said that he had shot a man; that he had shot his best friend, and inquired what he had better do. When advised to notify the authorities, he said that was proper and that he would remain in the building until it was done, which he did.

*Held*, that the statement made by the prisoner, that he had shot his best friend, was as consistent with an accidental as with an intentional shooting, and that it did not impose upon the prisoner the obligation to show some excuse or justification therefor.

That the court erred in refusing to charge that there was no legal implication, from the fact of the shooting, that the defendant intended to take the life of the deceased.

That it was for the people to prove not only the killing, but also all the other elements which went to make up the crime of murder, and that it could not be assumed, in the absence of excuse shown therefor, that the homicide was a private executing of the law or of vengeance.

A jury has no right to convict a man of a less degree of a crime, simply because it doubts whether he committed a greater degree, but the elements which constitute such degree must be themselves proved.

APPEAL by the defendant from a judgment entered in the office of the clerk of the county of Rensselaer on the 6th day of June, 1889, after a conviction of manslaughter in the first degree, under an indictment for murder tried at the Court of Oyer and Terminer of Rensselaer county.

*Orin Campbell, J. K. Long* and *Thomas S. Fagan,* for the appellant.

*L. E. Griffith,* for the respondent.

LEARNED, P. J.:

The defendant, indicted for murder, was convicted of manslaughter in the first degree for the killing of one James Logan.

When the people rested the following facts had been proved. The defendant, between eleven and twelve on the night of December fifth, went to the house of one Morey, an acquaintance, told him that some one had been shot at his (defendant's) house and asked Morey to go there with him. Defendant also said that he shot the man, and that he had shot his best friend. Defendant then went. for Dr. Harvie, who lived near; told the doctor that there was a man at his place who was dying and asked the doctor to go there with him. Defendant went away, but soon came back and wanted the doctor to hurry, and then said he was afraid he had killed his best friend. The doctor and defendant went, and on their way they joined Morey. All of them proceeded to Downs' house. They found Logan lying dead outside of the building, in the rear, and near the staircase which led to the second story. He had been killed by a bullet. Defendant was pale and sick and asked the doctor what he would better do. The doctor advised him to notify the authorities. He said that was proper, and he would remain in the building till the doctor had done this. He remained there till the coroner came, an hour or two afterwards. To the coroner he said he had shot his

best friend, and he did not know why. Logan was a strong athletic man. At the time he was shot he had on a heavy overcoat, a thick undercoat, vest, shirt and pantaloons. The bullet passed through the overcoat, undercoat, vest, shirt and suspenders. After defendant had been taken to the jail he said he did not know where the pistol was, that he probably threw it on the floor. It was afterwards found under the bureau. Defendant kept a saloon, and he and the deceased had been friendly and intimate. Deceased had often been in the saloon, and he was in the saloon that evening about half past ten. Mrs. Downs was waiting on the bar; no one else was there at that time. On the overcoat, near the bullet-hole, there were no marks of the burning of powder. The wound was an inch to the right of the right nipple. There were no other marks of violence.

These are substantially all the facts tending to show defendant's guilt which had been proved when the people rested. It will be seen that the statement made by the defendant that he had shot Logan, or had shot his best friend, is as consistent with an accidental, as with an intentional, shooting. And, furthermore, that there was no attempt on defendant's part to conceal the act. For he at once notified Morey and the doctor. And Logan had been dead but a few minutes when they arrived. If flight or concealment is evidence of guilt, then the contrary should be some indication of innocence.

Now, in *Stokes* v. *People* (53 N. Y., 164), it was held that mere proof that one has been deprived of life by the act of another utterly fails to show the class of the homicide under the statute; that it was error to charge that, the fact of the killing being conceded, the law implied malice from the circumstances of the case, unless the prisoner satisfied the jury that the killing was justifiable. In the present case nothing had been shown as to the circumstances of the killing when the prosecution rested.

In the case of *People* v. *Beckwith* (108 N. Y., 68), where a homicide was committed in the defendant's house privately, the court commented on previous threats of the prisoner, on the second murderous blow with a knife, on the concealment and mutilation of the remains, on the flight of the prisoner and his falsehood as to the acts of concealment, as evidence of premeditation and of malice. Nothing of that kind exists in this case.

The defendant then testified in his own behalf. In brief, his testimony was that he had gone to bed about eight o'clock; went to sleep; waked at half-past eleven; saw his wife at the table taking supper; that she then prepared for bed; that he asked her if she had locked the back door; in response to this inquiry he heard her go and open the back-door from the sitting-room to the kitchen; when she got there he heard a strange rustling noise; he got up, took his revolver, and pulled the cock; when he got to the kitchen-door he found his wife and the deceased on the floor in the act of carnal connection. He testified that he pulled Logan off; that Logan collared him and began to fight him and knocked his head; that he went dizzy and the pistol went off; that he did not know it was going to explode; that Logan fell; that the prisoner looked for his wife but she had gone; that he went to the bed-room and put on his pantaloons; then went to Logan and found him struggling to get up; that he lifted him and got him to the top of the steps to get air and both went down the steps; that Logan then lay down and the prisoner then saw blood on his shirt, and dressed and ran for Morey and the doctor.

The testimony of the wife is in harmony with this. She says as soon as she got into the kitchen some one took hold of her and threw her down; that Logan was on the floor with her; afterwards Logan and the defendant seemed to be fighting.

It appeared by the rebutting testimony of the prosecution that, on the examination before the coroner, she answered that she did not know to nearly every question put to her touching the matter. She further testified on the trial that Logan had never insulted her or made improper advances to her; evidently meaning before this occurrence.

There is not, that we discover, any other evidence tending to show what was the nature of the transaction by which Logan lost his life. There was no previous animosity shown, but, on the contrary, friendship, and no preparation for the act. The prisoner testified that he had had the pistol twelve months; had never loaded or fired it; never cocked or snapped it; did not know the workings; had always kept it on a little stand by the bed.

The case seems to have been tried upon the theory that the prosecution had shown an intentional killing of Logan by the prisoner,

and that it was for the prisoner to show some excuse or justification; as, for instance, defense of his wife's chastity. While, in fact, the defendant's testimony shows misadventure; and the prosecution showed nothing as to the circumstances surrounding the killing.

It was to this that the defendant's counsel had reference when he requested the court to charge that there is no legal implication from the fact of the shooting that the defendant intended to take the life of Logan. The prosecution insists that the refusal so to charge was correct. They urge that the defendant is presumed to have intended the natural consequences of his act. That maxim in its breadth is not correct. In *Thomas* v. *People* (67 N. Y., 225), the prisoner had sharpened a knife and with it struck a blow at a vital part of the body. He must have foreseen the actual consequences of his act and, therefore, must be presumed to have intended them. It is only such consequences as the circumstances show that the party must have foreseen which he is presumed to have intended. When an act produces consequences, however natural, which the actor could not have been supposed to foresee, he is not presumed to have intended them.

Now, in this case the mere fact of killing, without evidence as to attendant circumstances, or preceding or subsequent circumstances throwing light on it, does not create an implication that defendant intended to take Logan's life. The mere fact of killing proves homicide, but it does not prove whether the homicide is a crime or is justifiable or excusable.

Another part of the charge is as follows: "Here has been a homicide; here has been a human life taken. It becomes a serious question as to whether or not a man shall execute the law or execute vengeance upon his fellow. If he does it he must do it at the peril of either being punished for it or being able to excuse himself when called upon to answer to the wrong, within one of the excuses that is fixed and given in the law. If he is not, he must be found guilty of one or the other of the crimes which are imputed to him by reason of the homicide." This was excepted to.

It seems to us that the same error exists here. It is that of assuming that homicide is a crime, or that homicide is a private executing of the law or of vengeance. It is for the people to prove

not only the killing but also all other elements which make the crime, and not to assume that a homicide is a private executing of the law or of vengeance, unless excuse is shown. (*People* v. *Willett*, 36 Hun, 500 ; *People* v. *Hill*, 49 id., 432.)

There are some cases cited by the prosecution, such as *People* v. *Schryver* (42 N. Y., 9), where it is said that the homicide being proved, it is for the prisoner to satisfy the jury of his excuse or justification. But on looking at these cases it will be found that the proof of the homicide included proof *prima facie* of a malicious killing. There are some expressions in text-books also to this effect. (4 Bl. Com., 201.) But they are not in harmony with the doctrine of the *Stokes Case* and of other subsequent decisions.

It is undoubtedly true that the jury were not bound to believe the defendant's testimony or that of his wife. But the rejection of the whole or of part of that testimony does not supply the want of proof or justify a mere guessing at the facts without evidence. If the evidence of the defendant and of his wife is rejected, then there is no evidence as to the circumstances under which Logan lost his life. The learned justice took that view, because he charged that the jury could not find a fact to be established, without evidence, against the sworn statement of the defendant and his wife, even though they were interested witnesses. But the only kind of manslaughter in the first degree of which defendant could be convicted is homicide in the heat of passion by means of a dangerous weapon. Yet, if the testimony of defendant and his wife are rejected, there is no evidence tending to show this. If accepted, there was misadventure. If part only is accepted, it is not justifiable to make out the rest of the elements of the crime from mere conjecture.

The jury, in finding defendant guilty of manslaughter in the first degree, must have repudiated the theory that defendant took Logan's life in defense of his wife's chastity or in a temporary insanity caused by the sight of her unfaithfulness. They must have found that he took Logan's life in the heat of passion without intent to kill. When we examine the evidence tending to sustain this degree of crime we find it quite defective. There is no evidence of defendant's heat of passion. If his own statement is true, then he was attacked by Logan and became dizzy from a blow on the head, and did not intentionally discharge the pistol. The wife's

testimony adds nothing to the contrary. She speaks of the parties fighting, but that is the very expression which defendant used to describe the attack upon himself, saying that Logan "started to fight me and I went dizzy." If we reject the testimony of both, then we have no account of the occurrence; and, of course, it is not right to convict a man of a less degree of crime, simply because a jury doubt whether he committed the greater. Manslaughter is not half-proved murder, but the elements which constitute that less degree must be themselves proved.

The defendant's counsel urges that there was error in the charge as respects justifiable homicide. But the request of the defendant's counsel omitted one important clause in the definition of justifiable homicide (Penal Code, § 205); that is, that it was committed "in lawful defense" of the wife. That means in defending her against the danger of a felony or of great personal injury. Nothing in this case shows defense against an injury. The injury had been done before the homicide, and further attack on her was not to be apprehended.

We are, however, of the opinion that there were errors in the charge prejudicial to defendant as above pointed out. And we are further of the opinion that the evidence does not sustain the conviction. On the law and on the facts there must be a new trial.

LANDON, J.:

I concur in reversal, because I think there was error in the ruling that the defendant must satisfy the jury that some one of his defenses was true. If the jury had a reasonable doubt as to the truth of any one of them, the defendant was entitled to an acquittal. (Code Crim. Pro., § 389.) For in such case there would be a "reasonable doubt whether his guilt is satisfactorily shown." But upon the facts, if there were no errors of law, I should sustain the conviction, the evidence being ample to justify the finding that the defendant shot and killed Logan because he discovered him and his (defendant's) wife in the act of adultery.

FISH, J.:

I concur in result with the qualifications suggested by Justice Landon, not willing to say that on the merits the evidence does not sustain the conviction.

Judgment reversed and new trial granted on questions of law.