# Court of Appeals.

October 3, 1893.

## PEOPLE v. JOHN JOHNSON.

(54 St. Rep. 587; 139 N. Y. 358.)

1. Homicide—Premeditation.

A few moments may furnish sufficient time, for deliberation and premeditation so as to constitute murder in the first degree.

2. Same—Evidence.

Evidence of defendant's murderous act immediately after the killing of the deceased is competent as part of the same transaction, and as bearing upon the motive, intent and other ingredients of the crime charged.

3. Same—Motive.

> Where there is no dispute about the killing and the other ingredients of the crime are established, motive is unimportant, and a conviction may be proper though no motive for the crime can be shown or discerned.

4. Same—Self defense.

> Before one can justify the taking of life in self defense, he must show that there was reasonable ground for believing that he was in great peril, and that the killing was necessary for his escape from the peril, and that no other means of escape was open to him.

Appeal from judgment of the Cayuga oyer and terminer, convicting defendant of the crime of murder in the first degree.

Amasa J. Parker, for appellant.

A. P. Rich, for respondents.

EARL, J.—The defendant was indicted for murdering Charles Peck on the 17th day of April last. He was tried upon the indictment and found guilty of murder in the first degree on the 17th day of May, and sentenced to suffer death during the week commencing July 3d. He appealed to this court, and his counsel alleges various errors for which he contends that his client should have a new trial. His main contention is that there was not sufficient evidence of premeditation and deliberation to authorize the conviction.

The defendant and Peck were both convicts in the Auburn state prison. On the morning of April 17th the defendant had a fight with a fellow convict, in which he was the aggressor, in a room in which many convicts were at work. The fight was interrupted by one of the keepers of the prison, and two of the keepers took the defendant and were removing him from the room. They reached a stairway with him leading down into one of the rooms, and there he resisted by taking hold of the banisters. Then he broke away from the keepers and steped back into the room, drew an open knife from an inside pocket of his coat or vest, flourishing it and making a threatening remark. At this time, we think, the evidence satisfactorily shows that no assault was being made upon him or threatened by any one. After he had drawn the knife and was

holding it in his hand in a threatening manner, a convict by the name of McDonald, being near the place, made the remark to the keepers, in substance, that "he has got a knife; he will kill some one; shoot him." The defendant then went toward him in a threatening attitude, and he took a stick and hit him on the head, and retreating fell down. The defendant then advanced about fifteen feet upon Peck and stabbed him with the knife. Peck then struck him with a broom handle and retreated, and the defendant followed him up, and thrusting the knife into his heart, caused his instant death. Then, and not until then, the other convicts, in self-defense, and for the purpose of subduing him, surrounded him and commenced to assault him, and in the affray he killed another convict and wounded others.

There does not seem to have been any particular motive prompting the defendant to kill Peck. He was evidently a reckless, brutal, passionate man, hating, as he testified, convicts, and determined on that account to kill any one who came in his way. But it is not necessary to look for a motive where the crime is plainly proved. He had concealed on his person the open knife, which we must assume he had no right under the prison discipline to have. Knowing it was a dangerous weapon, he rushed upon his victim and dealt the fatal blow. The jury were abundantly justified in finding that he intended the consequences of his act. He drew the knife without provocation, being then in no danger and threatened with no assault. He was in the hands of keepers who would protect him, and whose duty it was to protect him. He first tried to assault McDonald with the knife, and then advanced upon Peck, stabbed him once, and then, as Peck attempted to defend himself, and was retreating from him, he dealt him another and fatal stroke. While all this occupied but a few moments, there was time, although very brief, for deliberation and premeditation, and thus there was sufficient evidence for the jury of all the elements answering the statutory definition of murder in the first degree. People v. Clark, 7 N. Y. 385; Donohue v. People, 56 id. 208; Leighton v. People, 88 id. 117; People v. Majone, 91 id. 211; People v. Hawkins, 109 id. 408; 16 St. Rep. 359.

The pretense of self-defense has not a shadow of satisfactory evidence to rest on. The defendant could have gone down the stairs instead of rushing back into the room, and he would have been out of the way of the other convicts and out of danger from anyone. He knew that the keepers were competent and willing to protect him. He must have known that the only danger of any assault upon him came from drawing and flourishing the knife, and that his trouble with his fellow convicts would end with the dropping of the murderous weapon. The homicide was without provocation and wholly without justification.

The defendant complains that the trial judge erred in allowing evidence of his murderous acts immediately after the killing of Peck. The evidence was competent as parts of some of the transaction, and as bearing upon motive, intent and other ingredients of the crime charged.

The charge of the judge was full and fair and the jury were properly instructed in the principles of law applicable to the case. No part of it was open to exception, and to no portion of it do we see any ground of complaint.

Defendant's counsel requested the judge to charge that there was no evidence of motive. All the circumstances were proved, and it was for the jury to determine, if they could, whether there was any motive prompting the commission of the crime. The request embraced no rule or proposition of law. The prosecution is never bound to prove a motive for the commission of a crime. Motive furnishes corroboration in a case depending upon circumstantial evidence. But where there is no dispute about the killing and the other ingredients of the crime are established, motive is unimportant, and a conviction may be proper although no motive for the crime can be shown or discerned. It is one of the facts tending to the identification of the criminal, or characterizing the criminal act, but is never, as matter of law, essential. People v. Fish, 125 N. Y. 136; 34 St. Rep. 840; People v. Trezza, 125 N. Y. 740; 36 St. Rep. 149.

The defendant's counsel asked the judge to charge "that if Johnson believed that the only way for him to defend himself when he broke away from the officers there at the head of the stairs was to use his knife, he was justified in doing so, and that

he was not called upon to attempt escape;" and the request was denied, the judge referring to his charge as made and refusing to alter it. He had properly and fully charged the jury as to the law of self-defense and justifiable homicide. We know of no authority which lays down the doctrine of self-defense as embraced in this request. It leaves out of consideration the rule that he was bound to retreat and flee from the threatened danger if he could. Even if he believed that the knife was the only means to defend himself, he had no right to resort to it and no occasion to make that defense until he had attempted the easy and ready mode of escape from any danger which was available. Besides, before one can justify the taking of life in self-defense, he must show that there was reasonable ground for believing that he was in great peril, and that the killing was necessary for his escape from the peril, and that no other safe means of escape was open to him. Penal Code, § 205; Shorter v. People, 2 N. Y. 195; People v. Sullivan, 7 id. 396; People v. Carlton, 115 id. 618; 26 St. Rep. 434.

The judge was also requested to charge "that if the jury believed that after the defendant was struck by McDonald upon the head with a club, he was dazed or crazed, or his mind became in such a condition that he did not realize what he did after that, that he is not responsible for his acts, and that they must acquit him." The judge replied to this: "Yes, gentlemen, if you reach the conclusion that the blow which McDonald struck affected his mind so that he did not know right from wrong, and did not know the nature of the act that he was doing, then he would not be guilty, and could not be convicted; but you must be satisfied, gentlemen, from all the evidence in the case that that was the condition of his mind; that he did not know the nature of the act which he was doing."

The defendant's counsel then excepted to the qualification of his request, and asked the judge to charge that "if he was in such a dazed condition that he did not know what he was doing, or did not realize what he was doing, that he is not guilty." To this the judge replied: "If it affected his mind so that he did not know the nature of the act, I charge that proposition." The request was a proper one as an abstract proposition of law, with but little if any support in the evidence. But the judge, in

substance, charged it, and it cannot be doubted that the defendant received from the language used by the judge the full benefit of it.

No other exceptions or phases of this case require particular attention. The defendant had a fair trial and was ably defended. We see no reason for granting him a new trial, and his conviction must be affirmed.

Judgment affirmed.

All concur, except GRAY, J., not voting.