# Court of Appeals.

April 9, 1895.

## PEOPLE v. CHARLES F. WILSON.

(71 S. R. 350.)

1. Homicide—Conspiracy.

> Where an unarmed peace officer, discharging his duties in a gentle and considerate manner is thrown entirely off his guard by the apparently docile and submissive way in which his prisoners are allowing him to conduct them to the police station, and such prisoners are two desperate men, one of whom is the defendant, who carry concealed weapons of an unusually deadly and dangerous character, but both of them are submissive and quiet until the defendant utters his warning cry to "let her go," when each springs into the utmost activity and the defendant strikes the officer with a blow from the butt of his revolver and at almost the same instant of time the bullet of the other prisoner completes the work of death, it is sufficient to establish a perfect and complete combination and concert of action between the defendant and his associate.

2. Same.

> It matters not whether such understanding or agreement was formed as part of a general policy adopted by the defendants while following a life of crime, or an instantaneous compact, born of the exigency of the occasion. The deliberation and premeditation essential to constitute the crime may have existed in either case.

Appeal from judgment of the court of oyer and terminer of the county of Onondaga, entered upon a verdict, convicting defendant of the crime of murder in the first degree, and also from an order of said court denying a motion for a new trial.

Harrison Hoyt, for appellant.

Benjamin J. Shove, Dist. Atty., for respondent.

BARTLETT, J.—On the 31st day of July, 1893, James Harvey, a detective and member of the Syracuse police force, was

shot and instantly killed on a public street in that city at ten o'clock in the forenoon. The tragedy was witnessed by a number of citizens. Two brothers, Lucius R. Wilson, and this defendant, Charles F. Wilson, were jointly indicted for murder in the first degree as the alleged perpetrators of the crime.

The defendants demanded separate trials. Lucius R. Wilson was tried, convicted, the judgment affirmed by this court and sentence of death duly executed.

In September last this defendant was convicted of murder in the first degree at the Onondaga oyer and terminer and we are now called upon to review that judgment.

The learned counsel for the defendant introduced no evidence on his behalf. The material facts are few and simple.

On the night of Sunday, June 4, 1893, the shoe store of McBride & Co., on South Salina street, was entered by burglars, the safe opened and about $600 in money taken, including a quantity of silver in quarter dollar pieces, dimes and nickels.

On the Friday and Saturday preceding the burglary three strangers had taken meals together in Palmer's restaurant. Two of these strangers were the Wilson brothers, but the identity of the third person has never been disclosed. On the Monday following the burglary the same three strangers again visited the restaurant, coming in separately, but eating their meals together.

Their bill was three dollars, and it was paid with three quarters, five nickels and twenty dimes.

The three strangers then disappeared from the city of Syracuse.

The proprietor of the restaurant had his suspicions aroused by the facts already narrated, and he conferred with McBride and the police officials as to the possibility of the three strangers being implicated in the burglary of the previous Sunday night.

It was finally arranged that if the suspected men should again visit the restaurant Palmer was to communicate with police headquarters, and they would be placed under arrest.

Detective Harvey was advised of the situation and instructed to make the arrest if the opportunity presented.

On the morning of the murder, between nine and ten o'clock,

the Wilson brothers again appeared in Palmer's restaurant and ordered breakfast. Palmer at once telephoned police headquarters, and in a few minutes Detective Harvey appeared upon the scene.

At the time of Harvey's arrival the Wilson brothers were eating their breakfast. Harvey desired to make the arrest at once, but Palmer asked him to wait until the men had left the restaurant.

A brief description of the location of the restaurant and police station is essential to a proper understanding of the closing scenes in this tragedy.

Water street runs east and west, Warren street north and south.

Mann's tea store is located at the southeast corner of Water and Warren streets, facing west on Warren street.

The police station is on Water street, one block east of Mann's store and on the same side of the street.

Palmer's restaurant is two blocks south of Mann's store on the east side of Warren street.

Harvey was killed on Water street, about two hundred and fifteen feet east of Mann's store and one hundred and sixty feet west of the police station.

When the Wilson brothers left Palmer's restaurant they proceeded north, on Warren street, in the direction of Mann's store, which was two blocks distant.

Harvey followed them and when opposite Mann's store he tapped them on the shoulders and the three stepped into the doorway of the store where they apparently engaged in a quiet conversation lasting from one to three minutes, according to the testimony of several witnesses who saw the transaction, but were not near enough to hear what was said.

No witnesses were produced who heard the conversation.

The Wilson brothers and Harvey then left the doorway, Harvey between them, but not holding or touching them; Lucius was on his left and Charles, this defendant, on his right.

In this position they proceeded north, turned east on Water street walking quietly towards the police station. Next east of Mann's store a new building was in process of erection and

the sidewalk was barricaded, the obstruction extending some little distance beyond the curb line.

The three men walked out into the street around the barricade and as they approached the eastern corner of it Harvey had each prisoner by the arm; they were still proceeding quietly and not engaged in conversation.

Just as they were turning in toward the sidewalk this defendant, Charles F. Wilson, exclaimed, "Let her go;" at the same instant he caught Harvey by the coat with his left hand and jerked him around so that while he had been walking east he faced west; with his right hand he drew from his hip pocket a revolver ten or twelve inches long and dealt Harvey a severe blow with the butt of it on the left side of the head which dazed him and caused his knees to bend as if he was about to fall; at that moment Lucius, who had in the meantime freed himself from the grasp of Harvey and running to the west on Water street a distance, fixed by various witnesses anywhere from eight to twenty-five feet, turned and, drawing a revolver similar to the one his brother carried, discharged through the head of Harvey a forty-five calibre ball, which entered at the right eye and merged at the back of the skull. This defendant, when the shot was fired by his brother, stood about four feet from Harvey, with his revolver in hand, evidently awaiting the result of his brother's fire, and ready to complete this assassination of an unarmed peace officer if the first bullet failed to do its work.

The brothers then fled; Lucius was captured in about thirty minutes after the shooting and this defendant nearly a month later in the city of Buffalo.

The main question presented is whether, as a matter of law on the facts presented by the people, the conviction of this defendant can stand notwithstanding he did not fire the fatal shot.

The learned trial judge in his charge to the jury instructed them with great clearness as to the law governing the case, and repeatedly reminded them there were two theories upon which the defendant could be convicted of murder in the first pegree, if, in their opinion, the fact justified it; he called to their attention as the first theory that murder in the first degree

is the killing of a human being from a deliberate and premeditated design to effect the death of the person killed or of another (Penal Code, § 183, subd. 1), and that a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission is a principal, Penal Code, § 29; he also pointed out, as the second theory, that murder in the first degree is the killing of a human being without a design to effect death, by a person engaged in the commission of or in an attempt to commit a felony, either upon or affecting the person killed or otherwise. Penal Code, § 183, sub. 3.

The jury were instructed that the people claimed the evidence justified a finding that there was an understanding between these two brothers, made previously or at the time, to resist to the utmost being arrested even if that resistance led to the taking of human life, and this being so it constituted a deliberate and premeditated design to kill, and death resulting, it was murder in the first degree.

The jury were also instructed that if they found the two brothers were acting jointly and were aiding and assisting each other in escaping or attempting to escape by force from the lawful custody of the deceased then they need not find a design to effect Harvey's death, and both were guilty of murder in the first degree.

It was also left to the jury to determine whether, under all the circumstances of this case, the two brothers were in lawful custody of Harvey as a peace officer on a charge of felony, and were aiding and assisting each other in an attempt to escape.

The jury were, throughout the charge, cautioned again and again to keep in mind the legal distinctions to which the court had called their attention. Indeed, the counsel for the defendant urged, upon the argument, that the prisoner was prejudiced by this repeated reference of the trial judge to the legal distinctions in the case.

We are unable to see any force in this criticism, but on the contrary are persuaded that the jury must have approached the consideration of this case with a very clear apprehension

of the principles of law that were to control them in the discharge of their duty.

A careful study of the facts in this case satisfies us that the jury were justified in rendering a verdict to the effect that this defendant is guilty of murder in the first degree.

There is abundant evidence to sustain the conclusion that there was a deliberate and premeditated design by these two brothers acting in concert to slay Harvey. It matters not whether that understanding or agreement was formed as part of a general policy adopted by these desperate men while following a life of crime, or an instantaneous compact, born of the exigency of the occasion, when James Harvey had each by the arm and was within one hundred and sixty feet of the police station whose cell doors were about to close upon them. The deliberation and premeditation essential to constitute the crime may have existed in either case.

The immediate facts surrounding the killing are the only evidence the people could adduce to prove this agreement or understanding, and they were persuasive and convincing to the last degree.

We have an unarmed peace officer discharging his duty in a gentle and considerate manner, and thrown entirely off his guard by the apparently docile and submissive way in which his prisoners were allowing him to conduct them to the police station; we have two desperate men carrying concealed weapons of an unusually deadly and dangerous character; we have perfect concert of action between the prisoners, both submissive and quiet until this defendant uttered his warning cry to "Let her go," and then each sprang into the most intense activity; this defendant dazed Harvey with a blow from the butt of his revolver, and at almost the same instant of time the bullet of Lucius completed the work of death.

It is fair to assume from the evidence that within ten or fifteen seconds after this defendant gave his fatal signal James Harvey was lying dead in his tracks with this defendant standing within four feet of him, with his revolver in hand, watching the effect of his brother's shot.

A more perfect and complete combination and concert of ac-

tion could not be disclosed by human evidence.   The killing of Harvey was the joint act of these two brothers.

The jury, however, may have adopted the other theory of the case, and reached the conclusion that the two brothers were in the lawful custody of Harvey on a charge of felony, and were aiding and assisting each other in an attempt to escape, which act was also felony, and properly regarded the design to effect Harvey's death as immaterial.

The facts fully support such a finding by the jury.

As the verdict was general it is impossible to say which theory of the case the jury selected.

Having reached the conclusion that the jury were entitled to convict the defendant on either theory of the case it remains for us to consider the exceptions of the defendant.

Daniel W. Savage, a waiter in the restaurant where the Wilson brothers took breakfast the morning of the murder, was permitted to testify, against the objection of the defendant, that he said in a natural tone of voice to Palmer, the proprietor, when the Wilsons were passing through into the dining room, and between five and seven feet distant from him: "There goes the burglars."   This was a circumstance to be considered by the jury; it was for them to determine whether the Wilsons heard the remark, and if they believed they did, it was a fact of the very greatest importance bearing both upon the subject of the arrest and of the opportunity afforded the suspected men to make the most deliberate and complete agreement to resist arrest if the police authorities should attempt it.   In this latter aspect this seemingly trifling incident becomes of paramount importance.

It would make deliberation and premeditation on the part of the Wilson brothers not only possible, but highly probable in the light of the subsequent events already commented upon at length.

The fact that Savage was permitted to give his opinion under cross-examination that he did not believe the Wilsons heard his remark is entitled to no weight.   The cross-examination was thorough and searching as to this incident, and it was for the jury to say if the suspected men overheard the remark.

The witness Henry P. Haze was allowed ᴛᴏ state that the indicted men were brothers.

The defendant's counsel insists this evidence was calculated to harm the prisoner. We think it was competent and had a direct bearing upon the issue of agreement between the Wilsons to effect their escape by concert of action. This fact by itself would not prove such an agreement, but it is one of many circumstances proper for the jury to consider.

The defendant's counsel make several requests to charge the jury, which were refused.

The first reads: If the jury find that there was no intent by defendant to kill the officer, and he did not know that Lucius R. Wilson was going to kill him, then, although present and striking Harvey, he cannot be convicted of murder in the first degree.

The court refused to charge this proposition as a whole.

The trial judge pointed out that the statute provided that the intent must be to kill the person who was killed or another, and that if the arrangement was, before the Wilsons met Harvey, to resist to the extent of killing some person to them unknown, he could not charge the proposition as submitted.

The most obvious vice of this request to charge is that it was general in its character and not limited, as it should have been, to the first subdivision of the statute which deals with the killing of a human being from a deliberate and premeditated design to effect the death of the person killed or of another.

It would have been error to have charged this proposition under the third subdivision of the statute where there was no design to effect death by a person engaged in the commission of a felony. Penal Code, § 183, subdivisions 1 and 3.

The suggestion that the context of the record reveals that the requests to charge immediately preceding the one under consideration referred to the first subdivision of the statute, and that this one obviously did, is without force, as the criticism is to some extent inaccurate, and furthermore each request must stand by itself.

The prisoner could not have been prejudiced, as the trial

judge had explicitly charged the jury under the first subdivision of the statute, and laid down the law properly.

We think there was no error in refusing to charge this request.

The next refused request reads: "If an agreement existed between the parties to escape from the officer, but not to murder him, then the killing by one is not the act of the other, and unless the jury believe he intended the death of the officer he cannot be convicted of murder in the first degree."

This request is general in its character, and does not state the law accurately; to have charged it as it stands would have been error.

The next three requests refused read: "There is no evidence that this defendant aided or abetted in the killing of Harvey.

There is no sufficient evidence of a preconceived and common purpose, resolution and agreement to resist Harvey, or any officer, to the extent of killing the officer.

There is no sufficient circumstance proven in this case to warrant the jury in finding any resolution or agreement by defendant with Lucius R. Wilson to commit murder."

We think each of these requests was properly refused, as all the questions were for the jury.

The defendant's counsel refers to a refusal to charge at folio 1679 of the case under his fifth point. The court and counsel seem to have reached an agreement as to the request there considered.

The last request referred to by defendant's counsel reads:

If the jury have a reasonable doubt as to defendant's guilt of murder in the first degree, they may convict in a less degree.

This was afterwards modified to read "second degree" instead of "less degree."

The trial judge then defined murder in the second degree and told the jury substantially they could convict of that degree under the first subdivision of the statute if they had a reasonable doubt as to deliberation and premeditation; he then said to the jury in substance, that under the other subdivision of the statute there was no element of intent involved, and if they found no agreement to act in concert they could not convict

the defendant at all, and if they found concert of action it would be murder in the first degree.

This seems to us the fair intent and meaning of a somewhat discursive charge made in response to this particular request, and we do not think there was a refusal to charge as requested in view of all that was said.    The final result was that the jury were correctly instructed as to the law.

We may state in conclusion that we have not confined our examination of this case to points presented by the prisoner's counsel, but have considered every possible ground for exception or error contained in the record, and are unable to say that the verdict of the jury should be set aside.

The judgment of conviction and order appealed from should be affirmed.

All concur, except ANDREWS, Ch. J., GRAY and O'BRIEN, JJ., who dissent on the grounds:   (1) That there was no sufficient evidence to justify the court in submitting to the jury the question whether, on the day of, or on any day preceding the homicide, the defendant and Lucius R. Wilson (who fired the shot which killed Harvey) had entered into a joint agreement, conspiracy or confederacy to resist, to the taking of human life if necessary, and attempt by any person to arrest or detain them, or hold them in custody, and (2) that the charge of the judge to the effect that if the jury found that such combination or agreement was made, and that the killing of Harvey by the shot fired by Lucius R. Wilson was in execution of such common design, the defendant, Charles F. Wilson, could be convicted of murder in the first degree, was erroneous, for the reason that the evidence furnished no sufficient basis for the charge.

Judgment affirmed.

### NOTE ON "DELIBERATION AND PREMEDITATION."

All that the law requires is this: That there should be some reflection and thought, that precede the blow.  People v. Hawkins, 16 St. Rep. 359; 109 N. Y. 411.  If there are a choice and determination as the result of such mental actions, there is sufficient deliberation within the law.  Id.

Something more than the actual presence of intention formed at the instant of the striking of the blow or firing of the shot, is necessary. People v. Walworth, 4 N. Y. Cr. 355.

There must be a deliberate and premeditated design to effect death, distinguishable from a suddenly formed intention without deliberation and premeditation. Id.

If a choice is made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder. People v. Leighton, 88 N. Y. 117.

The intention to kill must precede the act by some appreciable space of time; but the time need not be long. People v. Majone, 91 N. Y. 211.

It is enough that the intention precedes the act, though the latter follows immediately. People v. Conroy, 97 N. Y. 76; People v. Clark, 7 id. 393.

The time for deliberation and premeditation need not be long and may be short. People v. Beckwith, 3 St. Rep. 104; 103 N. Y. 368; 5 N. Y. Cr. 230.

If it furnishes room and opportunity for reflection, and the facts show that such reflection existed, and the mind was busy with its design and made the choice with full chance to choose otherwise, the condition of the statute is fulfilled. Id.

No particular time is prescribed by law within which deliberation and premeditation must occur, to constitute murder in the first degree. People v. Druse, 5 N. Y. Cr. 14; People v. Majone, 1 id. 86; People v. Magano, id. 411; People v. Conroy, 2 id. 565; People v. Kiernan, 3 id. 247; 4 id. 88.

If the time is long enough for choice to kill or not to kill, and for the formation of the purpose to kill, it is sufficient. People v. Druse, ante.

The act which causes the death must be deliberate in the sense that it was not committed under the influence of a sudden and uncontrollable impulse, produced by a proximate cause, and it must be premeditated in the sense that an intention to inflict the injury must have preceded the doing of the act. Id.

Time to form the purpose of killing, to announce such intention and to carry it into effect, is time enough for deliberation and premeditation. People v. Kiernan, 101 N. Y. 618; 4 N. Y. Cr. 94; People v. Leighton, 88 N. Y. 117; People v. Majone, 91 id. 211; 1 N. Y. Cr. 94; People v. Conroy, 97 N. Y. 75; 2 N. Y. Cr. 565.

In People v. Johnson, 54 St. Rep. 587; 139 N. Y. 358, it was held that, though the transaction occupied but a few moments, there was time, though very brief, for deliberation and premeditation.