*182 OPINION OF THE COURT
Gerard E. Delaney, J.
This petition for a writ of habeas corpus is made on behalf of Charles J. Culhane, currently incarcerated in the Sing Sing Correctional Facility in Ossining, New York, pursuant to a judgment of conviction for murder (Penal Law § 125.25 [3]— "Felony Murder”, L 1965, ch 1030, eff Sept. 1, 1967, class A felony). Such conviction in the Supreme Court, County of Ulster, State of New York, in 1975, resulted in the petitioner being sentenced to a term of 25 years to life.
Petitioner’s first trial on such charge in 1970 resulted in a mistrial when the jury reported itself unable to reach a unanimous verdict. The petitioner was tried and convicted a second time in 1971 and sentenced to death by the Trial Justice. However, on appeal, such conviction was ultimately reversed by the Court of Appeals on the ground that the Trial Justice’s refusal to excuse a number of prospective jurors for cause denied petitioner a fair trial. (See, People v Culhane, 33 NY2d 90.) Petitioner’s ultimate 1975 conviction has been affirmed on review by the New York State Court of Appeals. (People v Culhane, 45 NY2d 757.) On the instant writ petitioner contends that his 1975 judgment of conviction was "illegal and a nullity because the indictment failed to allege a cognizable crime under the law in effect at the time [and that] the invalidity of [the] indictment therefore deprived the trial courts of criminal subject matter jurisdiction”.
The court finds initially that the writ of habeas corpus is properly brought in the County of Westchester under CPLR 7002 (b) inasmuch as petitioner is incarcerated in the Sing Sing Correctional Facility located in this county and the Ninth Judicial District and further that, contrary to the argument of respondents, such writ need not be converted to a CPL article 440 proceeding for which the proper forum would be Ulster County, inasmuch as the availability of a CPL 440.10 (1) (a) motion to vacate petitioner’s judgment of conviction on grounds that the court did not have jurisdiction of the action "does not preclude a defendant with a traditional state habeas corpus continuation from seeking a writ at a Supreme Court term of the county of incarceration instead of advancing it upon the proposed motion” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 440.10, p 320; accord, People ex rel. Brady v Scully, 111 AD2d 419 [2d Dept 1985]). The court notes, however, that Rules of the *183 Second Department, Appellate Division, which had previously mandated that issues of a jurisdictional basis on a writ be maintained in the court of first instance (22 NYCRR 683.1) were rescinded by administrative order of the Chief Administrative Judge of the Courts, the Honorable Joseph W. Bellacosa, effective January 6, 1986. (McKinney’s New York Rules of Courts [1986 Rev ed, Feb. 1,1986].)
In substance, petitioner alleges that inasmuch as attempted escape in the second degree was, in 1968, a class A misdemeanor, such could not serve as a predicate "felony” for purposes of applying the felony murder statute for the crime in 1968 and, accordingly, the underlying conviction should be vacated and the petitioner set free for lack of subject matter jurisdiction.
It is noted that petitioner raised the exact same issue on appeal of his first conviction, however, the Court of Appeals in reversing, did not reach the felony murder issue. (People v Culhane, 33 NY2d, at p 95.) Following petitioner’s conviction in 1975, he again appealed, however, failed at this time to raise the issue of subject matter jurisdiction at all. That such issue was not reached on the first appeal nor raised on the second, even though the jurisdictional issue might have been determined, it appearing that the question was not formally raised in the lower courts (cf. People v Patterson, 39 NY2d 288, 295), has now resulted in a fundamental issue of law, visá-vis jurisdiction and the Legislature, being determined by this court through habeas corpus through the nontransferability of the writ to a CPL article 440 motion to the court of original jurisdiction, Ulster County.
Petitioner’s writ is buttressed solely on an examination of the law in a memorandum of the Honorable Justice Peter J. McQuillan, Administrative Judge, First Judicial District, Supreme Court of the State of New York, in April 1986, entitled Felony Murder and the Misdemeanor of Attempt Escape: a Legislative Error in Search of a Correction.
For purposes of this petition, the underlying factual statement is taken from the opinion of the Court of Appeals in People v Culhane (33 NY2d 90, 95-96):
"On September 13, 1968, three prisoners, Culhane, Bower-man, and McGivern were being taken by auto from the Auburn State Prison to White Plains in connection with a coram nobis hearing on behalf of Culhane. The two escorting deputy sheriffs were riding in the front seat of the car. The *184 car was Deputy Sheriff Fitzgerald’s personal car so there was no screen separating the prisoners from the two deputy sheriffs, Singer and Fitzgerald, who were riding in the front seat. Each deputy carried a .38 caliber revolver at his side.
"Prisoners Culhane and McGivern were handcuffed to a loop in front of their security belt. Each belt buckled in the back. Prisoner Bowerman’s belt was fastened in the front with a chain and a hasp to which the handcuffs were attached. None of the belts were attached to each other. At the time of the incident in question, Culhane was sitting behind the driver, McGivern was in the middle and Bowerman was on the right, behind the passenger side of the front seat.
"They never reached White Plains, for the trip ended in violence in Ulster County, during the course of which the appellants were wounded and the prisoner Bowerman and Deputy Sheriff Fitzgerald were killed.
"Appellants were charged with felony murder for killing the Deputy Sheriff during an attempted escape (Penal Law, § 125.25, subd. 3). At the trial the People relied on both circumstantial evidence and the eyewitness testimony of Deputy Singer to prove their case. Singer’s testimony, which was inconsistent as to certain particulars, was used to show that Bowerman and Culhane 'jumped’ the deputies from behind and using their handcuffs to choke them while McGivern seized one of the Sheriffs’ revolvers and killed Fitzgerald. Evidence was also submitted demonstrating that Bowerman’s belt had been cut on the left side; appellants’ belts had been unbuckled; and that a search of the prisoners’ clothes revealed that Bowerman possessed a handmade handcuff key, and Culhane, a razor blade.
"Defendants’ theory was that only the deceased prisoner, Bowerman, had attempted to escape.”
The crime of which petitioner was convicted was under the revised Penal Law as introduced at the 1965 legislative session and was enacted into law, effective September 1, 1967. Laws of 1965 (ch 1030):
"§ 125.25 Murder.
"A person is guilty of murder when * * * (3) [ajcting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such *185 crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants” (emphasis added).
Thus, included within such statute as a specifically enumerated predicate was the crime of attempted escape in the second degree. Under the Penal Law that existed at such time, section 205.10, escape in the second degree, read, inter alia, "A person is guilty of escape in the second degree when * * * 2. Having been arrested for, charged with or convicted of a felony, he escapes from custody. Escape in the second degree is a class E felony”. Further, under the Penal Law at that time (§ 110.05 [5]), an attempt to commit a crime is a: "5. Class A misdemeanor when the crime attempted is a class E felony”. Accordingly, at the time of petitioner’s crime, attempted escape in the second degree was a class A misdemeanor.
In substance, Justice McQuillan argues in his memorandum that "including in the revised Penal Law of 1967, a misdemeanor as a crime that may serve as a foundation for a Felony Murder conviction is contrary to all prior statutory law respecting the Felony Murder doctrine as interpreted and understood by New York Courts” (McQuillan, op. cit., at 72). "The legislature intended that the Felony Murder statute in the revised Penal Law be limited in application to a violent felony; certainly, it did not intend to revise the law to encompass a misdemeanor * * * A court would, therefore, be fully justified, in the proper exercise of its power to interpret and construe statutes in order to carry out legislative intent, in excising the misdemeanor of Attempt Escape in the Second Degree from the enumerated crimes in the Felony Murder statute” (McQuillan, op. cit., at 106).
Justice McQuillan also notes that if the facts in the Culhane case had arisen before September 1, 1967 (i.e., before the revised Penal Law took effect), the defendants in attempting to escape would have been guilty of a felony. (McQuillan, op. cit., at 112.) It is further noted in such memorandum that "an attempt to escape by a person in confinement or custody on charge or conviction for a felony, form the basis for a felony murder prosecution under both the Penal Code of 1881 and the Penal Law of 1909.” (McQuillan, op. cit., at 70.) "This was so because what the Penal Code of 1881 prescribed in essence, that an attempt to commit a felony was itself a felony. (Sections 5, 14 and 686). * * * The Penal Law of 1909 produced no revision of the attempt, escape and homicide stat *186 utes; i.e., these provisions in the 1881 Penal Code were simply reenacted without any change in substance and continued in effect until 1967 when the revised Penal Law became operative” (McQuillan, op. cit., at 69). Under the operation of law, attempts under the revised Penal Law of 1967 became one degree lesser than the fully completed subsequent crime. From 1967 until 1983, Penal Law § 205.10 (2) punished the escape from custody of a person charged with any felony as a class E felony. This was amended in 1983 wherein currently, under Penal Law § 205.15 (2) a person is guilty of escape in the first degree when "[h]aving been arrested for, charged with or convicted of a class A or class B felony, he escapes from custody”. Such was made a class D felony. (L 1983, ch 277, §4.) The crime of escape in the second degree was also amended at such time and Penal Law § 205.10 (2) currently reads, inter alia, "A person is guilty of escape in the second degree when * * * 2. [hjaving been arrested for, charged with or convicted of a class C, class D or class E felony, he escapes from custody”. Escape in the second degree is currently a class E felony. (Culhane’s underlying conviction by plea was for robbery in the second degree in 1966, for which he was subject to imprisonment to a term not exceeding 15 years. [Penal Law § 2127; L 1909, ch 88.] Under current law such a sentence range would qualify it as a class C felony.)
Thus, petitioner Culhane’s conduct, had it been committed subsequent to 1983 enactments, would have constituted the crime of attempted escape in the second degree, a class A misdemeanor. It is noted with emphasis that even after the 1983 revision, the crime of attempted escape in the second degree remains both a class A misdemeanor and also currently remains as a predicate crime under Penal Law § 125.25 (3).
In the opinion of this court, such mistake, if any, by the Legislature in the revised Penal Law of 1967 is equally susceptible to the interpretation that what may have been inadvertence on its part was not the classification of attempted escape in the second degree as a predicate crime under Penal Law § 125.25 but rather, the classification of escape in the second degree as a class E felony without realization of its impact and import under the "Felony Murder” statute if, indeed, escape in the second degree were attempted.
With due respect to Justice McQuillan, this court cannot agree with his statement that "the manifest legislative pur *187 pose of the Felony Murder statute should not be sacrificed to a literal reading of the words used in defining the crime” (McQuillan, op. cit., at 122). This court does not find the "legislative purpose” quite as "manifest” as Justice McQuillan would like in his brief, not only in the instant issue but on the questioned viability of the felony murder doctrine in general.
This court does not sit as a super Legislature, utterly free to disregard the laws as enacted. Indeed, the public interest requires the legislative enactments be given recognition and be enforced by the courts as embodying the will of the People. (Cf. Matter of Zorach v Clauson, 303 NY 161, 172, affd 343 US 306.) What Justice McQuillan would have this court do is to excise a substantive crime retroactively (and implicitly prospectively) which has been determined by the Legislature (with no persuasive proof, in this court’s opinion, as to its lack of intent) to be the crime of murder.
While certainly statutes may be stricken as unconstitutional should the law and its application arise, this court does not see a constitutional issue herein. While concepts of proportionality between crime and sentence are briefly touched upon in Justice McQuillan’s memorandum, it does not seem to this court to be persuasive for it is the underlying conduct involved in the act of an escape or attempted escape which the Legislature saw fit to raise to the degree to serve as a predicate for operation of the murder statute. Nowhere in the murder statute of the revised laws of 1967 does it indicate that the predicate for murder under Penal Law § 125.25 must be a felony.
This court agrees with Justice McQuillan that one thing shown by the legislative history of such statute is that predicates to such "Felony Murder” (and this court notes and considers the use of such phrase as a term of art only) have been narrowed over the years. In 1829 the first comprehensive clarifications in the law of New York defined murder, inter alia, as effected by "a person engaged in the commission of any felony ” (2 Rev Stats [1st ed], part IV, ch I, tit I, §§ 4, 5; emphasis added). In 1860, the Legislature narrowed such provision by indeed, eliminating the phraseology "any felony”, listing therein specifically enumerated crimes or their attempts, to wit, arson, rape, robbery, burglary "or in any attempt to escape from imprisonment” (L 1860, ch 410, § 2). Justice McQuillan points out that by inclusion of the phraseology "any attempt to escape from imprisonment” by operation of the appropriate escape section in effect at such time (3 Rev *188 Stats [5th ed], part IV, ch I, tit IV, art 3, §§23, 24) would have, at that time, under a literal reading have included a “misdemeanor” as a predicate also (§ 24), inasmuch as imprisonment was for such attempted escape deemed to be a term not to exceed one year. However, Justice McQuillan states that “it is not reasonable to infer that the legislature intended to include the misdemeanor of attempted escape defined in Section 24. The only reasonable conclusion is that a drafting error occurred.” (McQuillan, op. cit., at 60 — the same type of "inadvertent error” which he alleges is so obvious in the Revised Statutes of 1967.)
While new legislation in 1862 (L 1862, ch 197) revised the "Felony Murder Doctrine” to expressly limit it to arson in the first degree “the Court of Appeals did not interpret this statute literally” (McQuillan, op. cit., at 61). In 1873 the Legislature returned a more expansive view of “Felony Murder” wherein “any felony” could serve as the predicate to first degree murder, similar to the Revised Statutes of 1829. (L 1873, ch 644.) "The Penal Code of 1881 in its revision was similar in punishing 'a person engaged in the commission of, or in an attempt to commit a felony’. The Penal Law of 1909 produced no revision of the attempt, escape and homicide statutes; i.e., those revisions in the 1881 Penal Code were simply reenacted without any change in substance and continued in effect until 1967, when the revised Penal Law became operative” (McQuillan, op. cit., at 69). In its revision of the Penal Law in 1967, the Staff of the State Commission on Revision of the Penal Law and Criminal Code in referring to the specific enumeration of the predicates of Penal Law § 130.25 (enacted as § 125.25 [3]) stated that "the scope of the crime is narrowed by (1) predicating a selective list of specified felonies as the only ones which may form a foundation for felony murder, and (2) requiring that the homicidal act be of a sort that is 'inherently dangerous to human life.’ The effect of these changes probably would not be very marked, since felony murders are almost invariably committed in the course of one or another of the specified felonies, and almost invariably by an act inherently dangerous to human life. The purpose of the indicated limitations is to exclude rare instances of accidental or not reasonably foreseeable fatality, and especially those which might happen to occur in a most unlikely manner in the course of a non-violent felony.” (1964 Commission Staff notes, Proposed New York Penal Law § 130.25, at 339-340; emphasis added.)
*189 Later Commission Staff comments refer to the elimination of the phraseology "an act inherently dangerous to human life” by stating that "if the latter element is eliminated in new section * * * it is believed the hardness of the existing doctrine is sufficiently alleviated by the requirement that the underlying crime be one of the dangerous offenses enumerated without a further requirement that the particular homicidal conduct be also an inherently dangerous nature.” (1965 Commission Staff comments — -Proposed Penal Law of New York art 125; emphasis added.) While Justice McQuillan indicates the Commission prior to the 1967 revision spoke in terms of underlying "felonies”, this court’s reading of such comments justifies its own belief that what both the Commission and the prior legislative history of the law dictates is that it was the underlying conduct, i.e., the substantive crime itself and not its classification as a misdemeanor and/or felony which served both the original purpose of the doctrine and its continued viability in that such conduct of crimes and their attempts were in and of themselves so potentially dangerous to human life that such constitutes a predicate basis for the charge of murder, should death occur.
Attempted escape from custody is, in the opinion of this court, such an inherently dangerous act not only to the escapee but to his captors and the public in general that such properly and constitutionally may serve as a predicate for the crime of murder under Penal Law § 125.25 (3). If a mistake was made, as argued by Justice McQuillan, it was, in this court’s opinion, in the degree classification of attempted escape in the second degree through the operation of Penal Law § 110.05 and the Legislature’s failure to remember that under the revised Penal Law of 1967 all attempts at felonies were not necessarily "felonies” as they had been in the past and not in its inclusion as a predicate crime of potential violence in Penal Law § 125.25 justifying a "Felony” murder charge.
Legislative enactment carries a strong presumption of constitutionality and statutes are presumed to be valid unless they bear no rational relationship to legitimate legislative purposes. (Cf. United States v Carolene Prods. Co., 304 US 144, 152-154.) The courts declare an act of the Legislature unconstitutional only when the unconstitutionality is clear and such must be without doubt. (Cf. People v Crane, 214 NY 154, 173, affd sub nom. Crane v New York, 239 US 195.) While this court agrees with Justice McQuillan that it has the power to *190 interpret laws of the Legislature wherein there is ambiguity, the court finds no such ambiguity in the instant matter nor has petitioner made a case for excising a statutory predicate crime which raised his offense to that of murder under the laws of our State.
In construing provisions of the Penal Law, the Legislature has stated that the enumerated crimes therein are such as to, inter alia, "proscribe conduct which unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests * * * [t]o differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor * * * [and to] insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences” (Penal Law § 1.05 [1], [4], [6]).
Such provisions "must be construed according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law § 5.00).
Accordingly, petition denied and writ dismissed. Judgment for respondents.