THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES J. CULHANE, Appellant, v JAMES E. SULLIVAN, as Superintendent of Sing Sing Correctional Facility, Respondent.

Second Department, July 18, 1988

## APPEARANCES OF COUNSEL

*Daniel Meyers* and *Victor J. Rubino (Elizabeth M. Fink* of counsel), for appellant. (One brief filed.)

*Robert Abrams, Attorney-General (Gerald J. Ryan* and *Burton Herman* of counsel), for respondent.

## OPINION OF THE COURT

WEINSTEIN, J.

■ The novel contention presented on the instant appeal is that the petitioner's indictment and conviction of felony murder were invalid as contrary to the underlying intent of the felony murder statute (Penal Law § 125.25 [3]) inasmuch as the predicate conduct, attempted escape in the second degree, constitutes a misdemeanor as opposed to a felony. It is beyond cavil that an attempt to commit a class E felony is punishable as a class A misdemeanor (Penal Law § 110.05 [7]). Since the crime of escape in the second degree is categorized as a class E felony (Penal Law § 205.10), an attempt to commit that crime is properly punishable as a class A misdemeanor. The crime of attempted escape in the second degree is nevertheless included among the list of predicate acts upon which a conviction of felony murder can be based (Penal Law § 125.25 [3]). For the reasons which follow, we decline to depart from the statutory directive which quite unambiguously includes attempted escape in the second degree as a predicate for a felony murder conviction. We conclude instead, that the mere fact that the petitioner committed a homicide in the course of a crime other than a felony does not preclude his conviction of murder in the second degree pursuant to Penal Law § 125.25 (3) where, as here, the predicate conduct is attempted escape in the second degree.

By way of pertinent factual background, the petitioner and two other prisoners, Bowerman and McGivern, were being transported by automobile from the Auburn State Prison to White Plains in connection with a coram nobis hearing on behalf of the petitioner on September 13, 1968, when the escape attempt was made. The two escorting Deputy Sheriffs, who were each armed with a .38 caliber revolver, were positioned in the front seat of the vehicle while the three prisoners, whose hands were handcuffed to nonadjoining security

belts, were seated in the rear. At some point in Ulster County, violence erupted during the course of which Deputy Sheriff Fitzgerald and the prisoner Bowerman were killed and the remaining two prisoners were wounded. The prisoners were thereupon charged with felony murder for the killing of the Deputy Sheriff during the course of an attempted escape (Penal Law § 125.25 [3]). At trial, the People utilized both circumstantial evidence and the eyewitness testimony of the surviving Deputy Sheriff to establish that prisoners Bowerman and Culhane attacked the officers from behind using their handcuffs to choke them while the prisoner McGivern seized one of the revolvers and murdered Fitzgerald. A search of the prisoners' clothing revealed that Bowerman possessed a hand-made handcuff key while Culhane had a razor blade. The defense proffered the theory that only the deceased prisoner had attempted to escape. After the first trial resulted in a hung jury, the prisoners were retried, convicted of felony murder and sentenced to death. The judgments of conviction were subsequently reversed by the Court of Appeals based on errors concerning challenges to prospective jurors *(People v Culhane,* 33 NY2d 90). After a third trial, the petitioner and McGivern were again convicted and the convictions were ultimately upheld *(People v Culhane,* 57 AD2d 418, *affd* 45 NY2d 757, *cert denied* 439 US 1047).

In his petition for a writ of habeas corpus sworn to on July 28, 1986, the petitioner alleged that the underlying indict-ment, his three subsequent trials, the judgments of conviction and his ultimate incarceration were legal nullities inasmuch as the indictment failed to allege a cognizable crime, thereby depriving the trial courts of subject matter jurisdiction. The respondent opposed the petition on the ground that the peti-tioner's challenge to his incarceration could have been raised and reviewed on the direct appeal or pursuant to CPL article 440 rather than by writ of habeas corpus.

That the petitioner's former attorneys were cognizant of the issue of whether the trial courts had subject matter jurisdiction prior to the instant appeal is evidenced by the fact that it was raised on the appeal from his first conviction. The Court of Appeals, however, did not reach the jurisdictional argument, predicating its reversal on grounds unrelated to the question of what constitutes felony murder. The issue was not raised on the second appeal. While the respondent's waiver argument is not without merit, we hold, in light of the importance of the issues raised and their impact upon the

validity of his conviction and sentence for murder in the second degree under Penal Law § 125.25 (3), that they are appropriately addressed in the instant habeas corpus proceeding (see, People ex rel. Keitt v McMann, 18 NY2d 257, 262).

The petitioner's writ was buttressed by an April 1986 unpublished article by Justice Peter J. McQuillan entitled "Felony Murder and the Misdemeanor of Attempt [sic] Escape: a Legislative Error in Search of a Correction" (hereinafter McQuillan, April 1986 Article).* In substance, the argument proffered was that the inclusion in Penal Law § 125.25 (3) of a misdemeanor that may serve as a foundation for a second degree murder conviction is antithetical to all prior law with respect to felony murder doctrine. The basic premise underlying the McQuillan article is that the Legislature could never have intended to include a misdemeanor as a predicate for felony murder and that the inclusion of attempted escape in the second degree was an obvious legislative oversight. That inclusion is characterized as an abrupt shift in the felony murder doctrine and as an expansion in its scope, which directly contravenes the perceived trend towards a narrowing of the field of predicate felonies from which a murder charge may derive.

We do not agree with those conclusions.

The petitioner's argument misapprehends the significance of the term "felony murder". A brief historical overview is in order.

At common law, the author of an unintended homicide was guilty of murder if the killing took place in the perpetration of a felony. This, in essence, became the doctrine of felony murder (2 Wharton, Criminal Law § 145, at 201 [14th ed 1979]). Starting in the 19th century, the Legislature narrowed the scope of the common-law felony murder doctrine by specifying that only specifically enumerated crimes or their attempts could constitute predicates for felony murder, to wit, arson, rape, robbery, burglary "or in any attempt to escape from imprisonment" (L 1860, ch 410, § 2). The "commi[ssion] or attempt to commit" formulation of enumerated crimes continues to be used in the present Penal Law (Penal Law § 125.25 [3]) and is also prevalent in the majority of other jurisdictions which retain a felony-murder type statute (2

---

* A version of this article entitled *Felony Murder and the Misdemeanor of Attempted Escape: A Legislative Error in Search of Correction,* has subsequently been published in 15 Fordham Urban LJ 821.

Wharton, Criminal Law § 145, at 205-207 [14th ed 1979]). The underlying rationale of the concept of felony murder has been succinctly summarized as follows: "What the enumerated felonies always seem to have in common is the element of danger or violence. By holding a felony-murderer strictly accountable, even though the homicide is unintended, the law is attempting to protect innocent lives—victims, law enforcement officers, bystanders. The law is not attempting merely to deter the commission of dangerous or violent felonies; presumably, the punishment authorized by law for such felonies is sufficiently severe to accomplish that purpose. But rather, the law is attempting to deter the commission of such felonies in a dangerous or violent way. For example, a potential robber may be encouraged to use an unloaded gun, to use a club rather than a gun, to use no weapon at all; or a potential arsonist or burglar may be encouraged to make certain that a target building is unoccupied" (2 Wharton, Criminal Law § 145, at 207-208 [14th ed 1979]).

The only significant change bearing on this issue which was effected by the 1967 revision of the Penal Law was the reclassification of the crime of an attempt to commit the felony of escape in the second degree as a class A misdemeanor. However, no change was made with respect to the inclusion of that attempt among the enumerated predicate offenses in the definition of felony murder under Penal Law § 125.25 (3). The mere fact that the class of the predicate offense was changed from a felony to a misdemeanor is not indicative of any abrupt shift of policy vis-à-vis the concept of felony murder. Nor is there any support for the petitioner's contention that the inclusion of attempted escape in the second degree as a specifically enumerated predicate crime in the felony murder statute was the product of legislative inadvertence dismissible as a mere drafting error. In essence, "it is the underlying *conduct* involved in the act of an escape or attempted escape which the Legislature saw fit to raise to the degree to serve as a predicate for operation of the murder statute. Nowhere in the murder statute of the revised laws of 1967 does it indicate that the predicate for murder under Penal Law § 125.25 must be a *felony" (People ex rel. Culhane v Sullivan,* 133 Misc 2d 181, 187).

The conduct of attempting to escape from custody is clearly not so benign as to render it irrational to punish as murder the commission of a homicide in the course of an escape attempt. While the "[a]ttempt to escape from a [deputy] sher-

iff's custody * * * is not in itself a felony * * * such attempt * * * involves a forcible assault upon the entire custodial apparatus, which is staffed by personnel who are customarily armed with lethal weapons and who are dutybound to resist force with force" *(People v Lynn,* 16 Cal App 3d 259, 269-270, n 9, 94 Cal Rptr 16, 22-23, n 9). Case law is replete with examples of attempts to escape from custody which have led to violence and death. Significantly, the success of the attempt has scarcely affected the dangerousness of this conduct *(see, e.g., People v Udwin,* 254 NY 255 [attempted escape from prison]; *People v Wilson,* 145 NY 628, 631 [escape from arresting officer]; *People v Johnson,* 110 NY 134, 139 [attempted escape from county jail]; *People v Lynn, supra* [attempted escape from custody in courthouse corridor]; *State v Mudgett,* 531 SW2d 275 [Mo], *cert denied* 426 US 910 [attempted escape from lawful confinement in State hospital]).

The conduct in the instant case involved the attempt to escape from a moving automobile by overpowering the Deputy Sheriffs who were positioned in the car's front seat, and culminated in the fatal shooting of one Deputy Sheriff and one prisoner *(see, People v Culhane,* 33 NY2d 90, 95-96). Such conduct certainly typifies the danger involved in attempting an escape from custody. The Legislature has no doubt recognized this danger by continuing to treat such conduct as a predicate for a charge of murder in the second degree under Penal Law § 125.25 (3). The risk of danger is particularly manifest in escapes involving automobiles. In instances in which such escape attempts have led to death, prosecution of the perpetrator for felony murder has frequently ensued *(e.g., State v Morgan,* 612 SW2d 1 [Mo]; *State v Beal,* 470 SW2d 509 [Mo]; *People v Burke,* 85 Ill App 3d 939, 407 NE2d 728; *People v Tillman,* 70 Ill App 3d 922, 388 NE2d 1253; *Sheriff, Clark County v Willoughby,* 97 Nev 90, 624 P2d 498).

This line of reasoning was cogently summarized by the Supreme Court: "Attempted escape from custody is, in the opinion of this court, such an inherently dangerous act not only to the escapee but to his captors and the public in general that such properly and constitutionally may serve as a predicate for the crime of murder under Penal Law § 125.25 (3). If a mistake was made, as argued by Justice McQuillan, it was, in this court's opinion, in the *degree* classification of attempted escape in the second degree through the operation of Penal Law § 110.05 and the Legislature's failure to remember that under the revised Penal Law of 1967 all *attempts* at

felonies were not necessarily 'felonies' as they had been in the past and not in its inclusion as a predicate crime of potential violence in Penal Law § 125.25 justifying a 'Felony' murder charge" *(People ex rel. Culhane v Sullivan, supra,* at 189).

We note that the Legislature, in enumerating the predicate crimes for felony murder, specifically changed an earlier draft, which had included escape in any degree, to the existing provision, which includes escape in the first and second degrees, but omits escape in the third degree. The Law Revision Commission also changed references in the statute concerning a "participant in the underlying felony" to "a participant in the underlying crime" and made similar changes in its comments *(see,* 1965 NY Legis Doc No. 25, at 11; McQuillan, April 1986 Article, at 81, 94-95). While these references do not unequivocally prove that the Legislature realized that a misdemeanor would serve as a predicate in the felony murder statute under the new law, it directly refutes the argument proffered by the petitioner that the inclusion of attempted escape in the second degree as a predicate crime contradicts legislative intent.

Insofar as courts are constitutionally bound to give effect to the expressed will of the Legislature, they have been cautioned to be "extremely hesitant in interpolating their notions of policy in the interstices of legislative provisions" *(Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471, 479). As recognized by a California appellate court, notwithstanding the contention that the felony murder rule was violative of " 'the principle of individual moral culpability' ", it could not be judicially abrogated inasmuch as it had been embodied in a statute after "considered judgment by the Legislature" *(In re Jessie L.,* 131 Cal App 3d 202, 218, 182 Cal Rptr 396, 406). Statutory provisions enacted by the Legislature and signed into law by the Governor stand for what their words manifest rather than the inner thoughts of a draftsman or adviser, irrespective of the contents of any memorandum written by a drafter of the legislation *(People v Graham,* 55 NY2d 144, 151; *accord, Matter of Daniel C.,* 99 AD2d 35, 41, *affd* 63 NY2d 927). As the Supreme Court recognized in the instant case, "the public interest requires [that] legislative enactments be given recognition and be enforced by the courts as embodying the will of the People" *(People ex rel. Culhane v Sullivan, supra,* at 187).

Consistent with the foregoing tenets, this court would be invading the domain of the Legislature were we to excise the

crime of attempted escape in the second degree as a predicate offense for murder in the second degree pursuant to Penal Law § 125.25 (3). The petitioner was properly convicted of a crime which is clearly defined in the Penal Law and we find no justification for failing to enforce the law. Accordingly, the habeas corpus proceeding was properly dismissed (133 Misc 2d 181).

Inasmuch as the petitioner's remaining arguments have been considered and determined to be without merit, the judgment appealed from should be affirmed.

MANGANO, J. P., KOOPER and HARWOOD, JJ., concur.

Ordered that the judgment is affirmed, without costs or disbursements.