(February 13, 2007)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM CUADRADO, Respondent. [830 NYS2d 65]—

Order, Supreme Court, New York County (William A. Wetzel, J.), entered March 28, 2005, which granted defendant's motion

pursuant to CPL 440.10 and vacated a judgment rendered July 22, 1993, convicting defendant of assault in the first degree, upon his plea of guilty to a superior court information charging him with that crime, and sentencing him to a term of 4 to 12 years, reversed, on the law, the motion denied and the judgment of conviction and sentence reinstated.

More than 15 years ago, on October 16, 1991, defendant and two codefendants attempted to rob two workers, Mohammed Gasem Gharama and Kahlid Altaffi, at a delicatessen on East 55th Street in Manhattan. Defendant shot both men, killing Gharama and wounding Altaffi. Defendant and his accomplices then fled, driving off in a van driven by a fourth participant in the attempted robbery. Defendant was arrested on October 19, 1991 and charged with various crimes, including the gunpoint robbery of Pradip Shah on October 17, 1991.

Specifically, in connection with the October 16 attempted robbery, defendant was charged in a felony complaint with murder in the second degree (for shooting and killing Gharama), assault in the first degree (for shooting and seriously injuring Altaffi), two counts of attempted robbery in the first degree and one count each of criminal possession of a weapon in the second and third degrees. Thereafter, by indictment number 11727/91, defendant and two of his codefendants were charged with murder in the second degree, attempted robbery in the first degree, two counts of attempted robbery in the second degree, and criminal possession of a weapon in the second and third degrees. Although Altaffi testified before the grand jury, defendant was not charged in the indictment with assault for shooting Altaffi. According to the People, the absence of an assault charge was due to an oversight by the Assistant District Attorney. With respect to the October 17 robbery, defendant was charged in a separate indictment with robbery in the first and second degrees, which subsequently was consolidated with the indictment for the murder of Gharama and the related crimes committed on October 16.

On June 30, 1992, defendant entered into a plea agreement in full satisfaction of both indictments. Defendant agreed to plead guilty to attempted murder in the second degree and criminal possession of a weapon in the third degree, to waive indictment and be prosecuted by a superior court information charging him with assault in the first degree, for shooting Altaffi, and to plead guilty thereto. In exchange for his guilty pleas, defendant was promised an aggregate prison term of 14 to 42 years. Specifically, defendant was promised consecutive sentences of 8 to 24 years on the attempted murder charge, 4 to 12 years on

the assault charge and 2 to 6 years on the weapon possession charge. In accordance with the plea bargain, defendant pleaded guilty on July 22, 1992 to first-degree assault under a superior court information. That same day, defendant was sentenced on all three charges to the agreed-upon prison terms.

Thereafter, defendant appealed to this Court from the judgments of conviction under the consolidated indictments and the superior court information. Significantly, defendant pressed only the claim that the sentence of 4 to 12 years on the assault conviction under the superior court information was excessive. Defendant raised no other claims with respect to either the judgment entered under the superior court information or the judgment entered under the consolidated indictments. This Court rejected defendant's excessive sentence claim (208 AD2d 1181 [1994]) and leave to appeal to the Court of Appeals was denied (84 NY2d 934 [1994]).

Nearly 12 years after his guilty pleas, defendant's trial attorney moved to vacate the judgment of conviction based on the assault of Altaffi entered under the superior court information.* In particular, counsel argued that defendant's waiver of indictment was ineffective because the felony complaint charged him with a class A felony and, at the time the superior court information was filed, he had already been indicted on other of the charges alleged in that complaint. Supreme Court, agreeing with defendant's contention that the superior court information was jurisdictionally defective, granted the motion. We reverse.

On similar facts, the Court of Appeals has held that when a waiver of indictment fails to adhere to statutory requirements, a defendant need not preserve the claim of error for review by making a motion to withdraw the plea (*People v Boston*, 75 NY2d 585, 589 n [1990]). At least in this sense, the failure "may be considered jurisdictional, affecting the organization of the court or the mode of proceedings prescribed by law" (*id.* [internal quotation marks and citations omitted]). On the other hand, the erroneous submission to the jury of a felony offense that is not charged in the indictment and is not a lesser included offense of a crime charged in the indictment does not, in the absence of a timely objection, require that a conviction for that offense be vacated. The error "is not jurisdictional" and "does not affect th[e] court's competence to entertain the action or to convict of that crime" (*People v Ford*, 62 NY2d 275, 283 [1984]). The extent to which defendant's assault conviction is rendered

---

* On a prior motion pursuant to CPL 440.20, defendant's sentence was modified so that the 2-to-6-year sentence on the weapon possession count would run concurrently with the other sentences.

jurisdictionally defective by the asserted failure to adhere to the statutory requirements for waiving indictment is a question we need not address. As discussed below, CPL 440.10 renders that question irrelevant.

Whenever any of the circumstances specified in CPL 440.10 (2) obtain, the Legislature's mandate is clear: the courts "must deny" the motion. Relying on paragraph (c) of subdivision (2), the People urge that Supreme Court was required to deny defendant's motion because "sufficient facts appear[ed] on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, [and] no such appellate review . . . occurred owing to the defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him."

Supreme Court erroneously concluded that the bar of CPL 440.10 (2) (c) is not applicable to the jurisdictional defect posited by defendant. In the first place, nothing in the language of subdivision (2) even suggests that its unequivocal command to reviewing courts is not applicable when the ground or issue raised on the motion is a jurisdictional defect. To the contrary, in clear and unambiguous language, the command applies whenever any of the specified circumstances obtain. Indeed, "where as here the statute describes the particular situations in which it is to apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208-209 [1976] [internal quotation marks and citation omitted]).

Any conceivable doubt on this score is dispelled by other language in CPL 440.10 that also makes clear that the bar of subdivision (2) applies to asserted jurisdictional defects. Paragraph (a) of subdivision (1) specifies that one of the grounds upon which the court "may" grant the motion is that "[t]he court did not have jurisdiction of the action or of the person of the defendant." Pursuant to the opening clause of subdivision (2), the command that a motion "must" be denied under the specified circumstances is expressly made to apply "[n]otwithstanding the provisions of subdivision one." These two clauses, read together, are tantamount to a declaration by the Legislature that all jurisdictional challenges to a conviction that are reviewable on the trial record must be raised on direct appeal.

We reject defendant's argument that "to whatever extent the plain language of Criminal Procedure Law § 440.10 appears to bar [his] claim, it is unconstitutional . . . because a statute can-

not overrule a constitutional pronouncement by the Court of Appeals." To the contrary, applying the bar of subdivision (2) of CPL 440.10 to defendant's motion is not at odds with any constitutional pronouncement by the Court of Appeals. In the case upon which defendant relies, *People ex rel. Battista v Christian* (249 NY 314 [1928]), the defendant had waived indictment and pleaded guilty to an information charging him with a felony, a procedure that was consistent with a statute but forbidden by the then applicable terms of article I, § 6 of the New York Constitution. In directing that the defendant be released, the Court of Appeals held that the constitutional prohibition could not be waived, and that his conviction was a "nullity" as "the court was without jurisdiction to try or condemn him" (249 NY at 321).

*Christian*, in short, does not hold that the federal or state constitution requires that a defendant be permitted to raise a jurisdictional defect in a collateral attack on a judgment of conviction even if the asserted defect could have been raised on direct appeal. In essence, defendant's position is that the constitution requires that criminal defendants be accorded two opportunities—both a direct appeal and a collateral attack—to overturn criminal convictions on jurisdictional grounds. However, defendant neither explains why two bites at the apple of judicial review are required in such circumstances nor identifies the provision of the federal or state constitution that is the source of this requirement. In *Christian*, moreover, the waiver of indictment transgressed an express constitutional prohibition. In this case, by contrast, defendant can claim only that the waiver violated the terms of CPL 195.10. Accordingly, *Christian* does not support the proposition that defendant's assault conviction is a constitutional nullity. But even if the asserted error in this case were of constitutional dimension, the Legislature has the authority to prescribe the procedures by which a defendant can obtain a remedy for the deprivation of a constitutional right (*see generally People v Bachert*, 69 NY2d 593, 596 [1987] [writ of error coram nobis may be used to review a claim of ineffective assistance of appellate counsel "until such time as the Legislature enacts a particular and comprehensive remedy"]).

Finally, defendant's passing and conclusory assertion in support of his motion on surreply to the effect that his appellate counsel was ineffective for not raising on direct appeal the validity of the superior court information is unavailing. If counsel was ineffective for that reason, it may be that defendant could avoid the bar of CPL 440.10 (2) (c) on the ground that his failure to raise the issue on direct appeal was justifiable. Whether

appellate counsel was ineffective, however, can be resolved only through a coram nobis petition (*People v Matthews*, 306 AD2d 134, 135 [2003], *lv denied* 100 NY2d 622 [2003]). We note, moreover, that if defendant had raised this claim on direct appeal, he faced the likelihood, if not the certainty, that the People would have been permitted to withdraw their consent to the plea bargain with the result that defendant would again have been exposed to a life sentence on the second-degree murder charge (*see generally People v Farrar*, 52 NY2d 302, 307-308 [1981]). Before raising such a claim any competent appellate counsel would have alerted his client to that risk. Concur—Saxe, Williams, Sweeny and McGuire, JJ.

Andrias, J.P., dissents in a memorandum as follows: Since there is no doubt that defendant's waiver of indictment and his guilty plea to the superior court information charging him with assault in the first degree was contrary to CPL 195.10 (2) (b) and therefore void, I disagree with the majority's holding that CPL 440.10 (2) (c) bars defendant's admittedly meritorious challenge to his conviction and would affirm the order granting defendant's motion pursuant to CPL 440.10 and vacating the judgment of conviction for lack of subject matter jurisdiction.

In this case we are faced with another variation on the theme of using superior court informations to prosecute and quickly conclude criminal proceedings by negotiation and guilty plea (*see People v Trueluck*, 88 NY2d 546, 547 [1996]).

On October 16, 1991, during a botched robbery by defendant and three accomplices of the 3 Deli and Grill at 133 East 55th Street in Manhattan, the then 16-year-old defendant shot and killed Mohammed Gasem Gharama and seriously wounded Kahlid Altaffi. In a Criminal Court felony complaint, defendant was charged with second-degree murder, two counts of attempted robbery in the first degree, criminal possession of a weapon in the second and third degrees, and assault in the first degree. Thereafter, by indictment number 11727/91, a New York County grand jury charged defendant with murder in the second degree, attempted robbery in the first degree, two counts of attempted robbery in the second degree, and criminal possession of a weapon in the second and third degrees. According to the People, the grand jury, "in an apparent oversight," was never asked to indict defendant for assault in the first degree. Defendant was also separately indicted and charged with first- and second-degree robbery based on an unrelated incident (indictment no. 1415/92).

On June 30, 1992, the indictments were consolidated for disposition and defendant, who was to be denied youthful offender

treatment, pleaded guilty to attempted murder in the second degree and criminal possession of a weapon in the third degree to cover all counts of the consolidated indictments in return for a promise of consecutive indeterminate sentences of 8 to 24 years on the murder count and 2 to 6 years on the weapon count. As part of the plea agreement defendant also waived indictment with the understanding that he would plead guilty to a still to be prepared superior court information charging him with assault in the first degree in return for a promised sentence of 4 to 12 years to run consecutively to the sentences imposed on the consolidated indictments.

On July 22, 1992, defendant pleaded guilty to assault in the first degree under the superior court information and was sentenced under the consolidated indictments and the information to consecutive indeterminate sentences with a total minimum of 14 years and a total maximum of 42 years. Defendant appealed and asked this Court to reduce his sentence in the interest of justice as being "unduly harsh and severe." His convictions were affirmed without opinion (208 AD2d 1181 [1994]) and leave to appeal to the Court of Appeals was denied (84 NY2d 934 [1994]).

Defendant's subsequent petition for a federal writ of habeas corpus, in which he argued that the imposition of the sentence for his assault conviction to run consecutively to the other two sentences was unconstitutionally excessive, was dismissed, without prejudice, for failure to exhaust his available state remedies (*Cuadrado v Stinson*, 992 F Supp 685 [1998]). Thereafter, on March 5, 2003, defendant's motion pursuant to CPL 440.20 was granted and the consecutive sentences imposed for his attempted murder and weapon possession convictions were ordered to run concurrently.

In July 2004, defendant then moved pursuant to CPL 440.10 to dismiss the superior court information charging him with first-degree assault on the ground that his waiver of indictment and subsequent guilty plea to the superior court information were executed in violation of CPL 195.10 (2) (b) in that he had already been indicted and was under the jurisdiction of the Supreme Court prior to the issuance of the superior court information. Defendant moved in the alternative, pursuant to CPL 440.20, to set aside the consecutive 4-to-12-year assault sentence and to run that sentence concurrently to his now concurrent 8-to-24-year and 2-to-6-year sentences on his attempted murder and weapon convictions.

In a decision and order (William A. Wetzel, J.) entered March 28, 2005, defendant's motion was granted and the court vacated

defendant's conviction for assault in the first degree under the superior court information. In so ruling, the court rejected the People's sole argument that, based upon the plain language of CPL 440.10 (2) (c) and the Third Department's decision in *People v Barber* (280 AD2d 691 [2001], *lv denied* 96 NY2d 825 [2001]), defendant's failure to raise his claim on his direct appeal foreclosed further review of such claim.

In 1928, the Court of Appeals unanimously held that irrespective of a statute that permitted a person charged with an infamous crime to waive indictment by a grand jury and plead guilty to a criminal information, the basic requirement of article I, § 6 of the Constitution of this State that " '[n]o person shall be held to answer for a capital or otherwise infamous crime . . . unless on presentment or indictment of a grand jury' " does not permit such waiver "where a question of jurisdiction or fundamental rights is involved and public injury would result" (*People ex rel. Battista v Christian*, 249 NY 314, 317, 318 [1928]). In language pertinent to the issue presented on this appeal, the Court stated: "If the Legislature and the electors of this State vote to delete the words of article 1, section 6, from the Constitution, the historic if not venerable institution of the grand jury may be abolished. Not by indirection can it be subverted or overthrown" (*id.* at 321; *see also Matter of Simonson v Cahn*, 27 NY2d 1 [1970]).

Forty-five years later, in November 1973, article I, § 6 of the Constitution was not abolished, but amended, effective January 1, 1974, to provide that "a person held for the action of a grand jury upon a charge for [a capital or otherwise infamous] offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney" (*see People v Trueluck*, 88 NY2d at 548-549, *supra*). After approval of the constitutional provision, the Legislature enacted the implementing article 195 of the Criminal Procedure Law, including section 195.10 (*see id.* at 549), which provides in pertinent part, as relevant to this appeal:

"1. A defendant may waive indictment and consent to be prosecuted by superior court information . . . .

"2. A defendant may waive indictment pursuant to subdivision one in either:

"(a) The local criminal court . . . ; or

"(b) the appropriate superior court, *at any time prior to the filing of an indictment by the grand jury*" (emphasis added).

As stated by the Court in *Battista*, a case cited with approval

to this day: "[T]he only question in this case is whether, irrespective of the statute, the basic prohibition of article 1, section 6, is capable of waiver" (249 NY at 318). In response to the Appellate Division's reliance upon the general rule that a constitutional provision for the benefit of a prisoner may be waived, the Court stated, in language equally relevant today: "Article 1, section 6, proceeds far beyond the point of conferring a mere personal privilege. Unqualifiedly, it prohibits the trial of any one charged with infamous crime except on presentment or indictment by a grand jury. Until the grand jury shall act, no court can acquire jurisdiction to try. In the most solemn and absolute language the Constitution dictates the only method by which one can be held to answer for murder, burglary, arson or any other infamous crime. Without the prescribed action by a grand jury, all our other tribunals are powerless to proceed. Such action is the foundation of jurisdiction" (*id.* at 319).

That principle of strict compliance with the constitutional mandate has survived the amendment of article I, § 6 of the Constitution permitting waiver of indictment in very specific circumstances. As subsequently held by the Court of Appeals in *Trueluck*: "A waiver of indictment and a departure from the constitutional safeguard and procedural *sine qua non* is available, however, only within the express authorization of the governing constitutional and statutory exception. The general good end, then, does not justify specific 'end run' means (*see* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 195.20, at 392-393). To hold otherwise would contradict the history and precedents that necessitated and led to this constitutional amendment in the first place and the as-applied precedents this Court has added to the mix after the 1974 change" (88 NY2d at 549). Therefore, there is no doubt that defendant's waiver of indictment and his guilty plea to the superior court information was contrary to CPL 195.10 (2) (b) and thus invalid.

Indeed, the People do not contest the invalidity of defendant's assault conviction and concede that defendant's arguments would have formed a valid appellate claim that could have been pursued on appeal notwithstanding his guilty plea and waiver of his right to appeal (*see People v Boston*, 75 NY2d 585, 586 [1990]; *People v Verrone*, 266 AD2d 16, 18 [1999], *lv withdrawn* 94 NY2d 868 [1999]). Nevertheless, they now appeal the vacatur of defendant's assault conviction and argue, as they did in Supreme Court, that CPL 440.10 (2) (c), which was enacted in 1970 as part of the new Criminal Procedure Law, imposes an absolute "mandatory procedural bar" to all claims that could

have been raised on defendant's direct appeal, including jurisdictional defects.

Recognizing that the Legislature cannot, by statute, divest an individual of a constitutional right recognized by the Court of Appeals, the People nevertheless argue that the Legislature clearly has the power to prescribe procedures by which a defendant can obtain a remedy for a deprivation of such a right. In effect, they contend that a criminal defendant who fails to raise an objection to the nisi prius court's subject matter jurisdiction on direct appeal of his or her conviction waives the right to raise such issue in a later collateral attack on the conviction either in a state habeas corpus proceeding or a motion to set aside the judgment pursuant to CPL 440.10 (1) (a). The question then arises, where a question of jurisdiction or fundamental rights under our State Constitution is involved that has been determined to be nonwaivable by our highest court, can the Legislature, in enacting CPL 440.10 (2) (c), nevertheless effect such a waiver by imposing procedural barriers to a defendant asserting such nonwaivable right. Based upon longstanding precedent and settled jurisprudence on the subject, the answer has to be no.

CPL 440.10 (1) (a) provides, in pertinent part: "1. At any time after the entry of a judgment, the court in which it was entered *may*, upon motion of the defendant, vacate such judgment upon the ground that: (a) The court did not have jurisdiction of the action" (emphasis added). Subdivision (2) (c) provides "2. Notwithstanding the provisions of subdivision one, the court *must* deny a motion to vacate a judgment when: . . . (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him" (emphasis added).

Prior to enactment of CPL 440.10, New York had no statute for collateral attack on a judgment of conviction. The motion to vacate judgment (CPL 440.10) and the motion to set aside sentence (CPL 440.20) "are designed collectively to embrace all extant non-appellate post-judgment remedies and motions to challenge the validity of a judgment of conviction" (Preiser, Practice Commentaries, CPL 440.10, at 247-248). However, while the codification of criminal procedures in 1971 subsumed most of the common-law postconviction collateral remedies

under CPL 440.10, the Legislature did not expressly abolish the common-law writ of coram nobis or necessarily embrace all of its prior or unanticipated functions (*People v Bachert*, 69 NY2d 593, 599 [1987]).

The People argue that whether an issue constitutes a nonwaivable question of law for purposes of direct review on appeal is distinct from the question of whether a defendant, who elects not to raise a defect on appeal, can be foreclosed from pressing the claim in a collateral proceeding. The former, it is urged, implicates the appellate jurisdiction of the Court of Appeals to review "questions of law," a constitutional limitation of which that Court is the final arbiter. The latter, it is urged, by contrast, concerns the availability of a postjudgment remedy that has been created as a matter of legislative grace, in this case CPL 440.10. Thus, they contend, it is not at all surprising that, following the enactment of CPL 440.10, courts have routinely held that a defendant cannot raise a jurisdictional challenge to an indictment in a state habeas corpus proceeding, but must instead pursue that issue on direct appeal or, if based on matters outside the record, in a CPL 440.10 motion.

However, despite the plain language of CPL 440.10 (2) (c), there is a critical distinction between defects implicating the integrity of the process and less fundamental flaws, such as evidentiary or technical matters (*cf. People v Hansen*, 95 NY2d 227, 231 [2000]; *People v Cooks*, 67 NY2d 100, 103-104 [1986]; *People ex rel. Gibbs v Vincent*, 39 NY2d 918, 919 [1976] ["the alleged trial error asserted is not reviewable in a collateral proceeding"]). Thus, while courts may routinely rely upon CPL 440.10 (2) (c) to foreclose collateral attacks on judgments that are merely voidable or liable to be vacated for error, as distinguished from one that is void ab initio, the People can point to no case where a court has rejected a defendant's claim that his or her conviction is void due to lack of subject matter jurisdiction solely on the ground that the claim is procedurally barred without also finding it to be unsustainable on its merits (*see e.g. People v Medina*, 273 AD2d 119 [2000], *lv denied* 96 NY2d 736 [2001]; *People v Moolenaar*, 207 AD2d 711 [1994], *lv denied* 84 NY2d 1013 [1994]).

The only ground on which CPL 440.10 and state habeas corpus overlap is on the question of lack of subject matter jurisdiction of the action that resulted in the conviction or lack of personal jurisdiction over the defendant (*see* Preiser, Practice Commentaries, CPL 440.10, at 248). Thus, even where lack of subject matter jurisdiction has not been raised at trial or on appeal, it has been held that habeas corpus lies. In *People ex rel.*

*Culhane v Sullivan* (139 AD2d 315, 317-318 [1988]), the petitioner, who had been convicted after three trials and two appeals of felony murder for the killing of a deputy sheriff during the course of an attempted escape, petitioned for a writ of habeas corpus on the ground that the underlying indictment, his three subsequent trials, the judgments of conviction and his ultimate incarceration were legal nullities inasmuch as the indictment failed to allege a cognizable crime, thereby depriving the trial courts of subject matter jurisdiction. The respondent opposed the petition on the ground that the petitioner's challenge to his incarceration could have been raised and reviewed on the direct appeal or pursuant to CPL article 440 rather than by writ of habeas corpus. Although the petitioner's former attorneys were cognizant of the fact and raised the issue on the petitioner's first appeal, it was not raised on the second appeal. As pertinent to this appeal, the Second Department stated: "While the respondent's waiver argument is not without merit, we hold, in light of the importance of the issues raised and their impact upon the validity of his conviction . . . , that they are appropriately addressed in the instant habeas corpus proceeding (*see, People ex rel. Keitt v. McMann*, 18 NY2d 257, 262)" (*id.*).

The Legislature, in adopting CPL 440.10, did not create a wholly new postconviction remedy, but merely codified the common-law remedy of coram nobis. Thus, in prohibiting a defendant from raising in a collateral attack on the judgment of conviction an issue that appears on the record and could have been but was not raised on direct appeal, the Legislature was not creating a new procedural bar, but merely codifying a longstanding common-law principle. Moreover, despite the procedural bar of CPL 440.10 (2) (c), at least one commentator has suggested that, while the revisors did not supply any specific explanation of the purpose of the "escape hatch" whereby "unjustifiable failure" to raise a point on appeal might be excused, consideration might be given to applying it where the ground was overlooked due to ineffective assistance of counsel (Preiser, Practice Commentaries, CPL 440.10, at 250).

The People argue that a defendant cannot raise any such claim in a 440.10 motion that has not been first successfully pursued in an antecedent coram nobis proceeding, and, quoting this Court's decision in *People v Felton* (239 AD2d 120, 121 [1997], *lv denied* 91 NY2d 872 [1997]), contend that "since appellate counsel had the opportunity to raise the issue, his failure to do so for whatever reason must be considered 'unjustifiable' for purposes of the statute." However, in *Felton*, the issue

involved not a question of jurisdiction or a fundamental right, but the propriety of written jury instructions, and this Court found that defendant was not denied effective appellate counsel where counsel made a tactical decision not to raise that contention and to focus on several other significant arguments on direct appeal.

In addition to *People v Barber* (280 AD2d 691 [2001], *lv denied* 96 NY2d 825 [2001]), which they relied upon before Supreme Court, the People also rely upon this Court's decision in *People v Jackson* (266 AD2d 163 [1999], *lv denied* 94 NY2d 921 [2000]), for the proposition that the procedural bar of CPL 440.10 (2) (c) applies even where lack of subject matter jurisdiction is claimed. However, in *People v Jackson*, although stating the well-established principle that a CPL 440.10 motion may not be used as a device to take a belated appeal on an issue that appears on the face of the record, this Court nevertheless considered the merits of the defendant's motion and found that the alleged error in his 1994 conviction concerning the proper degree of auto stripping did not create a jurisdictional defect (*id.* at 163, citing *People v Taylor*, 65 NY2d 1 [1985]). Likewise, in *Barber*, while noting that "much" of defendant's CPL 440.10 motion was properly denied on the ground that it raised issues that could and should have been raised by defendant on direct appeal (280 AD2d at 692), the Third Department went on to consider defendant's jurisdictional claim and reiterated the well-settled principle that, in seeking to nullify his waiver of indictment, a defendant cannot simply rely on a void in the record to prove that he was not held for the action of a grand jury as required by CPL 195.10 (1) (a) (*id.* at 693). According judicial proceedings a presumption of regularity and in view of the defendant's failure to submit proof to the contrary, the Court found the waiver of indictment was valid (*id.*).

Here, on the other hand, the People do not contest and, in effect, concede the lack of subject matter jurisdiction. "It is blackletter law that a judgment rendered without subject matter jurisdiction is void, and that the defect may be raised at any time and may not be waived (see 21 CJS, Courts, §§ 108-110, 116)" (*Lacks v Lacks*, 41 NY2d 71, 75 [1976]). Contrary to the People's assertion that while a defendant may have a nonwaivable right to assert lack of subject matter jurisdiction for purposes of direct review, a defendant who elects not to raise such a defect on appeal can be foreclosed from pressing the claim in a collateral proceeding, it is long settled that "[t]he want of jurisdiction makes the order and judgment of the court, and the record of its action utterly void and unavailable for any purpose, and the

want of jurisdiction may always be set up collaterally or otherwise" (*Kamp v Kamp*, 59 NY 212, 216 [1874]; *Royal Zenith Corp. v Continental Ins. Co.*, 63 NY2d 975, 977 [1984] ["a judgment rendered without jurisdiction is subject to collateral attack"]; *see* 50 CJS, Judgments § 546 [a void judgment is a nullity and, unlike one that is merely erroneous or voidable, may be attacked at any time by anyone directly or collaterally]). Such principles apply with equal force in criminal proceedings (*see* 1 Wharton's Criminal Procedure § 2:1, at 2-3 n 2 [14th ed] ["If a court lacks subject matter jurisdiction, that defect can be raised at any time and is not waivable"]; *People ex rel. Battista*, 249 NY at 319 ["prosecutions must be conducted in substance and without essential change as the Constitution commands. A conviction otherwise obtained is a nullity"]). In *People v Patterson* (39 NY2d 288, 295 [1976]), the Court of Appeals reiterated the principle that "[a] defendant in a criminal case cannot waive, or even consent to, error that would affect the organization of the court or the mode of proceedings proscribed by law . . . . Thus, the rule has come down to us that where the court had no jurisdiction . . . or where there was a fundamental, nonwaivable defect in the mode of procedure, then an appellate court must reverse, even though the question was not formally raised below."

The People also contend that by not raising it in Supreme Court, defendant failed to preserve his argument that, to the extent that its plain language appears to bar his claim, CPL 440.10 (2) (c) is unconstitutional because a statute cannot overrule a constitutional pronouncement by the Court of Appeals. However, although the question of the constitutionality of a statute may not be raised for the first time on appeal to the Court of Appeals, it may be raised on appeal to this Court (*Matter of Di Chiaro v New York City Police Prop. Clerk*, 32 NY2d 767 [1973]).

Finally, the People criticize defendant for waiting 11 years before raising this jurisdictional attack on his assault conviction so that, in the event his motion were granted, he would immediately be eligible for parole. They suggest that this was a strategic decision on the part of his attorney who, according to the People, "may well have negotiated the plea agreement knowing that it incorporated a defect and figuring that defendant could use it later to challenge the assault conviction." However, such argument strains credulity and, as stated by the unanimous *Boston* court: "Given the objective and the plain language of CPL 195.10 (2) (b), the conclusion is inescapable that waiver cannot be accomplished after indictment, as was the case here,

even where it is the defendant who orchestrates the scenario" (75 NY2d at 589). In so ruling, the Court specifically rejected the People's contention that the defendant's argument must be preserved for review, by motion before the trial court to withdraw the plea. "Failure to adhere to the statutory procedure for waiving indictment, which resulted in this accusatory instrument and this plea, may be considered jurisdictional, affecting 'the organization of the court or the mode of proceedings prescribed by law' (*People v Patterson*, 39 NY2d 288, 295; *see also, People v Ahmed*, 66 NY2d 307, 310; *People v Case*, 42 NY2d 98)" (*id.* at 589 n).